UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SCOTT S.,[1]

    **Plaintiff,**

v.                                  Civil Action 2:23-cv-1476

                                           Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Scott S. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Period of Disability and Disability Insurance Benefits ("DIB"). This matter, is before the Court for a ruling on Plaintiff's Statement of Specific Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply to Defendant's Memorandum in Opposition (ECF No. 10), and the administrative record (ECF No. 7). For the reasons that follow, Plaintiff's Statement of Specific Errors is **OVERRULED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I.     BACKGROUND

Plaintiff protectively filed his DIB application on September 16, 2019, alleging that he became disabled July 1, 2018. Plaintiff's claims were denied initially and on reconsideration. An Administrative Law Judge ("ALJ") subsequently held a telephone hearing on November 14, 2022, at which the Plaintiff, who was represented by counsel, testified. A vocational expert ("VE") also appeared and testified. The ALJ issued an unfavorable determination on December 7, 2022. (R. 23–38.) That determination became final on February 28, 2023, when the Appeals Council declined review.

Plaintiff seeks judicial review of that unfavorable determination. Plaintiff asserts one contention of error: the ALJ failed to adequately evaluate and account for prior administrative findings from state agency reviewers. The Commissioner correctly contends that Plaintiff's contention of error lacks merit.

## II.     THE ALJ'S DECISION

On December 7, 2022, the ALJ issued his decision. The ALJ initially determined that Plaintiff's earnings record shows sufficient quarters of coverage to remain insured through September 30, 2021 (the "date last insured") (R. 25). At step one of the sequential evaluation

process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity from the alleged onset date through his date last insured. (*Id.* at 25.) At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: obesity, traumatic brain injury/post-concussion syndrome/migraine headaches, cervical spondylosis, lumbar radiculopathy/sacroiliitis, left hip degenerative joint disease/osteoarthritis, left foot/ankle arthritis/posterior tibial tendon dysfunction/bursitis, gastric ulcers, major depressive disorder and post-traumatic stress disorder ("PTSD"). (*Id.* at 25–26.) The ALJ also found that Plaintiff had the following non-severe impairments during the relevant time period: obstructive sleep apnea and knee pain. (*Id.* at 26.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 26–29.) The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c).

3

> Claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 40 .1567(a) except that the claimant must be afforded use of a cane for all periods of ambulation; the claimant may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes, or scaffolds; the claimant must avoid all exposure to unprotected heights, hazardous machinery, and commercial driving; the claimant is limited to the performance of simple, routine, tasks and to the making of no more than simple, work-related decisions, conducted in a work setting that requires no more than occasional interaction with co-workers, supervisors, and the public, which setting is routine, in that it contemplates few changes.

(*Id.* at 29–36.)

The ALJ determined at step four that Plaintiff was unable to perform any of his past relevant work as a customer service representative truck driver, or material handler. (*Id.* at 36.) At step five, the ALJ, relying on testimony from a VE, found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Plaintiff could perform, including such representative occupations as document preparer, final assembler, and inspector. (*Id.* at 37–38.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 38.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats*

4

v. *Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr. v. Sec'y of Health & Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it conflicts with the mental limitations found by the state agency psychologists. Specifically, Plaintiff challenges the ALJ's assessment of the concentration and persistence limits and social interaction limits found by state agency reviewers Plaintiff's contentions of error lack merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1). The governing regulations[4] describe five different

---

[4] Because Plaintiff's applications were filed in 2018, they are subject to regulations that govern applications filed after March 27, 2017.

categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." § 404.1520c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

On December 2, 2019, Leslie Rudy, Ph.D. reviewed Plaintiff's file at the initial level. Dr. Rudy found that Plaintiff was capable of sustaining concentration and persistence to complete tasks in a setting void of fast pace demands; engaging in brief superficial interactions with others in the workplace; and adapting to infrequent changes in a relatively static work setting. (R. at 96–97.) At the reconsideration level, Joan Williams, Ph.D., reviewed Plaintiff's file. Dr. Williams found that Plaintiff had the same concentration, persistence, and pace limits, and the same social interaction limits. (*Id*. at 110–11.) Dr. Williams found, however, that with regard to adaptation, Plaintiff required "tasks to be static with infrequent changes in work tasks . . . . " and that "[i]f changes are needed, they should be presented to the [Plaintiff] ahead of time and allow for questions or concerns to be addressed." (*Id*. at 111.)

> The ALJ summarized the state agency reviewers' findings, writing as follows:
> The state agency psychological consultant Leslie Rudy, Ph.D., indicated that the claimant could perform work if no fast pace were demanded, where his interaction would be brief and superficial with others, and where he would experience infrequent changes. The state agency psychological consultant, Joan Williams, Ph.D., generally affirmed the opinion of Dr. Rudy except that Dr. Williams would require advance notice of changes.

(*Id*. at 35.) The ALJ next acknowledged that the reviewers had access to Plaintiff's file, were subject matter experts, and that they generally supported their findings by citing to the record. The ALJ wrote:

> Each of these doctors had the opportunity to review the evidence of record, to which each cited liberally in support of their conclusions, and each is well versed in the terminology and analytical framework employed in the disposition of these claims.

(*Id*.) Nevertheless, the ALJ ultimately concluded that the reviewers overestimated some of Plaintiff's limits while underestimating others, and thus, their findings were only marginally relevant. (*Id*. at 36.) The ALJ wrote as follows:

> These opinions have overstated the claimant's residual cognitive capacity. They have understated, to milder degree, his social capacity. The opinion of Dr. Williams has overstated, to minimal degree, his adaptive limitations. These opinions are only marginally consistent with, and supported by, the evidence of record and are not persuasive.

(*Id*. at 36.)

As part of that assessment, the ALJ discussed records related to the reviewers' finding that Plaintiff was "capable of sustaining concentration and persistence to complete tasks in a setting void of fast paced demands." (*Id*. at 96.) The ALJ wrote as follows:

> The record shows a claimant with depression and post-traumatic stress disorder. These would be expected to, and the record supports do (5F/12), (2E/3), impose at least periodic deficits of focus and concentration. However, the claimant is of, at worst, average intellect (5F/20), with an average fund of knowledge (5F/20). His memory is described as focused (5F/20), or normal (20F/3), or he is described as without cognitive impairment (13F/20), (15F/66), and with a logical thought process (5F/11), (13F/19), (15F/65). Provided he is limited to the performance of simple, routine, tasks, conducted free of the need to mull complex decisions, he

7

>appears to have retained sufficient, residual, cognitive function to serve as "backstop" against these periodic deficits from becoming fatal to competitive work.

(*Id*. at 35.)

As this discussion demonstrates, the ALJ determined that Plaintiff's history of depression and PTSD would impose periodic problems with his focus and concentration, but that a limit to simple, routine, tasks that did not require him to make complex decisions would prevent those periodic problems from interfering with his ability to work. (*Id*.) In support, the ALJ explained that Plaintiff had average intelligence and fund of knowledge, normal memory and cognition, and logical thought processes. (*Id*.) Substantial evidence supports that explanation—mental status exams showed that Plaintiff was of average intellect, with an average fund of knowledge, logical thought process, focused or normal memory, and normal cognition (*Id*. at 492, 501, 835-836, 924-925, 1146).

Plaintiff does not challenge the ALJ's record-based reasons for discounting the reviewers' concentration and persistence findings. Instead, he urges that the ALJ was required to more precisely explain why he did not include their pace in Plaintiff's RFC. (Pl's Statement of Specific Errors 9, ECF No. 8.) But the ALJ determined that the reviewers' findings were only marginally persuasive. And Plaintiff cites no authority suggesting that an ALJ is required to either adopt or explain the omission of a limit found by a non-examining physician whose findings have been discounted and found to be not persuasive.

When assessing the reviewers' findings, the ALJ also discussed records related to their finding that Plaintiff could engage in brief superficial interactions with others in the workplace. The ALJ wrote as follows:

>The claimant has described significant difficulties with others (3E/11), and often presents with questionable grooming (5F/20). However, he is demonstrably able to function in public settings, including on public transportation (3E/8). He has worked providing medical transportation, driving to and from Columbus twice in

8

> one day (15F/41). He typically presents in pro-social fashion in the record (5F/20), (13F/18), even when discernibly symptomatic of mood (15F/64). Provided some control over the frequency of his interaction with others is controlled, the claimant appears to have retained sufficient, residual, social function to engage in competitive work.

(*Id*. at 35–36.)

As this discussion demonstrates, the ALJ determined that although Plaintiff indicated that he had interaction issues and his appearance was often described as "questionable," a limit on the frequency of Plaintiff's interactions would prevent his interactions issues from interfering with his ability to work. (*Id*.) In support, the ALJ noted that Plaintiff was able to function in public settings like public transportation. (*Id*.) Substantial evidence supports that explanation—as the ALJ explained, Plaintiff reportedly used public transportation. (*Id*. at 323.) In addition, and as the ALJ accurately indicated, during the relevant period, Plaintiff worked providing medical transportation. (*Id*. at 900, 284–86, 293, 877, 1130.) The ALJ also accurately indicated that Plaintiff often presented as pro-social, even when he was discernably symptomatic. (*Id*. at 500, 834, 923.)

Plaintiff does not challenge the ALJ's record-based reasons for discounting the reviewers' social interaction findings. Instead, Plaintiff notes that although the reviewers found that he was limited to brief and superficial interactions, the ALJ determined that he was limited to occasional interactions. Plaintiff asserts that brief relates to duration, superficial relates to quality, and occasional relates to frequency, and thus, the ALJ erred because these limits are not coextensive. (Pl's Statement of Errors 10–11, ECF No. 8.) And indeed, courts have found reversible error where an ALJ substituted an occasional interaction limit for a brief or superficial interaction limit. But in those cases, unlike this case, an ALJ assigned great weight to an opinion or finding that included a superficial or brief interaction limit, but then omitted those limits, or

9

substituted a different one, when crafting a plaintiff's RFC without an adequate explanation for doing so. *See e.g., Hummel v. Comm'r of Soc. Sec.,* Civ. Action 2:18-cv-00028, 2020 WL 13572215, at *2 (S.D. Ohio, Mar. 13, 2020) ("When assessing Plaintiff's mental RFC, the ALJ gave the 'greatest weight' to those opinions . . .) ; *Corey v. Comm'r of Soc. Sec.*, 2019 WL 3226945, at *4 ("Despite assigning significant weight to Dr. Marlow's opinion, the ALJ failed to adequately explain why he omitted two of Dr. Marlow's opined limitations."). Here, however, the ALJ found that the reviewers mildly underestimated Plaintiff's ability to interact socially because other evidence suggested that he had a greater ability to interact with others, and consequently, he discounted their findings. (R. 36.) Plaintiff again fails to point to any authority suggesting that an ALJ is required to either adopt or explain the omission of a limit found by a non-examining physician whose findings have been discounted.

      Plaintiff additionally notes that the ALJ indicated that he incorporated into Plaintiff's RFC an occasional interaction limit instead of limits to brief and superficial interactions because he determined that Plaintiff was more capable than the reviewers surmised. (Pl's Statement of Errors 10–11, ECF No. 8.) Plaintiff challenges this explanation, asserting that there is no authority that suggests that occasional is less limiting than superficial. (*Id*.) But as Plaintiff has pointed out, these three limits relate to different social dimensions. The reviewers limited Plaintiff to brief *and* superficial interactions, and thus finding that Plaintiff was completely prohibited from participating in lengthy, in-depth communications. In contrast, the ALJ determined that Plaintiff could participate in *any kind* of communication, so long as he only had to communicate with others sporadically. The ALJ therefore determined that no type of interaction was completely prohibited. Instead, all communications were possibly, provided they occurred irregularly.

10

In short, the ALJ evaluated the reviewers' findings, explained that they were inconsistent with other record evidence, and concluded that limiting the frequency of Plaintiff's interactions was sufficient. That was adequate. Plaintiff's contentions to the contrary lack merit.

## V.     CONCLUSION

For the foregoing reasons, the Plaintiff's Statement of Specific Errors is **OVERRULED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE